Matthew T. Findley, AK Bar No. 0504009
ASHBURN & MASON, P.C.
1227 W. 9th Ave. Ste. 200
Anchorage, AK 99501
(907) 276-4331 (voice)
(907) 277-8235 (fax)
mtf@anchorlaw.com (email)

Local Counsel For *Amicus Curiae*


ATTORNEYS FOR AMICUS CURIAE
Jennifer Stisa Granick (Pro Hac pending)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110-1914
(415) 436-9333, Ext. 134 (voice)
(415) 436-9993 (fax)
Jennifer@eff.org (email)

Attorneys for *Amicus Curiae* Electronic Frontier Foundation

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRUCE ADAM DECKER,<br><br>Defendant. | NO. 3:09-cr-00105-TMB<br><br>BRIEF OF *AMICUS CURIAE* IN SUPPORT OF DEFENDANT'S MOTION TO QUASH SUBPOENA ISSUED TO YAHOO! PURSUANT TO 18 U.S.C. § 2703. |

## STATEMENT OF *AMICUS CURIAE*

The Electronic Frontier Foundation ("EFF") is a non-profit, member-supported civil liberties organization working to protect free speech and privacy rights in the online world. As part of that mission, EFF has served as counsel or *amicus* in key cases

1

addressing electronic privacy statutes and the Fourth Amendment as applied to the Internet and other new technologies. With more than 14,000 dues-paying members, EFF represents the interests of technology users in both court cases and in broader policy debates surrounding the application of law in the digital age, and publishes a comprehensive archive of digital civil liberties information at one of the most linked-to web sites in the world, http://www.eff.org.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The government seeks to compel Yahoo! to turn over the contents of Mr. Decker's email account without a search warrant and without any showing that the information is relevant and material to the government's case. Instead, the government relies solely on a broad trial subpoena that seeks about a year's worth of email content, from September 2008 to 180 days ago. This overly broad and unreasonable trial subpoena must be quashed because the Fourth Amendment protects stored emails just as it does conversational privacy and private papers.

## ARGUMENT

**I. USERS OF AN EMAIL SERVICE HAVE A REASONABLE EXPECTATION OF PRIVACY IN THEIR STORED EMAIL.**

    **A. Under Supreme Court Precedent Applying the Fourth Amendment to Telephone Conversations, Email Users Possess a Reasonable Expectation of Privacy in the Contents of Emails Stored with an Email Service Provider.**

Under the reasoning of *Katz v. United States*, 389 U.S. 347 (1967), which is the touchstone of modern Fourth Amendment doctrine, email users have a constitutionally protected "reasonable expectation of privacy" in their stored email messages. *See id.* at 360-61 (Harlan, J., concurring). Fourth Amendment protections apply where "a person

[has] exhibited an actual (subjective) expectation of privacy . . . that society is prepared to recognize as [objectively] 'reasonable.'" *Id.* The reasonableness of an expectation of privacy in the contents of stored emails is directly analogous to society's constitutionally-protected expectations of privacy in the contents of phone calls.

The Supreme Court in *Katz* held that "the Fourth Amendment protects people, not places." *Id.* at 351 (majority opinion). Even though Mr. Katz's telephone conversations were intangible and not "houses, papers, [or] effects," and even though they were transmitted via the telephone company's property, they were protected by the Fourth Amendment against search or seizure by the government. *Compare id. with Olmstead v. United States*, 277 U.S. 438, 464-65 (1928) (government's wiretapping of telephone lines outside of bootlegging suspect's home and offices was not a search or seizure because there was no entry into the suspect's properties). In *Katz,* the Supreme Court recognized that the Fourth Amendment protects society's shared expectations about what is private, and applied Fourth Amendment protections based on the telephone's vital societal role as a medium for private communication. *Id.* at 352 ("To read the Constitution more narrowly is to ignore the vital role that the public telephone has come to play in private communication."). In 1967, society's reliance on public telephones for private communication established both the subjective expectation that phone calls were private as well as the objective reasonableness of that expectation, giving rise to Fourth Amendment protection. *See id.*

Since *Katz*, the Supreme Court has looked regularly to societal expectations when applying the Fourth Amendment, particularly when scrutinizing new technologies. *See Georgia v. Randolph*, 547 U.S. 103, 111 (2006) (finding search based on spouse's

3

consent over target's objection unreasonable based on "widely shared social expectations" and "commonly held understanding[s]"); *Kyllo v. United States*, 533 U.S. 27, 34 (2001) (recognizing that technological advances must not be allowed to erode society's expectation in "that degree of privacy against government that existed when the Fourth Amendment was adopted").

Based on society's extensive use of email for private, sensitive communications, it is plain that email plays at least as vital a role in private communication today that the public telephone played in 1967, and that society expects and relies on the privacy of email messages just as it relies on the privacy of the telephone system.[1] It is equally plain that society expects privacy in its *stored* email messages: email users often store many if not all of their personal messages with the provider after they have been sent or received, rather than downloading them onto their own computers. *See United States v. Comprehensive Drug Testing, Inc.*, 579 F.3d 989, 1005 (9th Cir. 2009) (en banc) (noting that "many people no longer keep their email primarily on their personal computer, and instead use a web-based email provider, which stores their messages along with billions of messages from and to millions of other people.").

Indeed, the largest email services are popular precisely because they offer users huge amounts of computer disk space in the Internet "cloud" within which users can

---

[1] As of 2003, more than 100 million Americans used email, and "more than nine in ten online Americans have sent or read email." Pew Research Center, *America's Online Pursuits*, available at http://www.pewinternet.org/Reports/2003/Americas-Online-Pursuits.aspx (last visited Apr. 14, 2010). By 2008, the majority of Internet users (56%) were using webmail, where the messages are stored with the service provider. Pew Research Center, *Use of Cloud Computing Applications and Services*, http://www.pewinternet.org/Reports/2008/Use-of-Cloud-Computing-Applications-and-Services.aspx (last visited Apr. 14, 2010).

4

warehouse their emails for perpetual storage.[2] In light of these societal patterns, to hold that the hundreds of millions of people who store their email messages with providers such as Yahoo! or Microsoft or Google lack either a subjective or objective expectation of privacy makes no sense, and would plainly violate *Katz* by failing to protect society's expectations of privacy.

The Supreme Court's decision in *Smith v. Maryland*, 442 U.S. 735 (1979), reaffirmed and clarified *Katz*'s holding that the Fourth Amendment protects the contents of private communications such as email. The *Smith* court distinguished the contents of phone calls, which it reaffirmed are protected by the Fourth Amendment under *Katz*, from the dialed phone numbers acquired by "pen register" surveillance, which it held are not protected. *Id.* at 741-42.[3] *Smith* concluded that dialed phone numbers are not protected by the Fourth Amendment because "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," as that person has "assumed the risk" that the information "revealed" to the third party will be conveyed to the government. *Id.* at 743-744, *citing, inter alia, United States v. Miller*, 425 U.S. 435, 442-44 (1976) (holding that bank customer had no reasonable expectation of privacy in checks, financial statements, and deposit slips held by bank). Despite the fact that the

---

[2] For example, Google's "Gmail" service currently offers over more than seven gigabytes of free storage space. Google, *Google Storage*, *available at* http://mail.google.com/support/bin/answer.py?hl=en&answer=39567 (last visited Apr. 14, 2010); *see also* Google, *Getting Started with Gmail*, *available at* http://mail.google.com/mail/help/intl/en/start.html (last visited Apr. 14, 2010) ("**Don't waste time deleting messages** . . . . [T]he typical user can go for years without deleting a single message.") (emphasis in original).

[3] *Amicus* EFF does not agree that *Smith* was correct in holding that dialed phone numbers are not protected by the Fourth Amendment, but instead cites it only for the holding that the contents of communications are so protected.

electrical impulses constituting the contents of a telephone conversation are just as exposed to telephone company equipment as dialed numbers, *Smith* made clear that its holding did not disturb *Katz*'s reasoning because "pen registers do not acquire the *contents* of communications." *Id.* at 741 (emphasis in original). *Accord United States v. Thompson*, 936 F.2d 1249, 1252 (11th Cir. 1991) (noting that "a device which *merely* records the numbers dialed from a particular telephone line" does not violate the Fourth Amendment (emphasis added)). In other words, *Smith* held that *Miller*'s "assumption-of-risk" analysis does not extend to communications content protected under *Katz*, and confirmed that spying on what callers are saying is more invasive than knowing what phone numbers they are dialing. *See Smith*, 442 U.S. at 741 (quoting *United States v. New York Tel. Co.*, 434 U.S. 159, 167 (1977) (pen registers "disclose *only* the telephone numbers that have been dialed . . . [not] the purport of any communication between the caller and the recipient" (emphasis added))).

The content of stored email—like the phone call content protected under *Katz* and *Smith*—is in no way analogous to the business records at issue in *Miller*, but rather constitutes one's private papers and effects. As the *Miller* court explained in distinguishing *Katz*, "the documents subpoenaed [were] not respondent's 'private papers'" nor his "confidential communications," and the "respondent [could] assert neither ownership nor possession [of the documents]. Instead, these [were] *the business records of the banks*," which "pertain[ed] to transactions to which the bank was itself a party" and "contain[ed] only information . . . exposed to [the bank's] employees in the ordinary course of business." *Miller*, 425 U.S. at 440-42 (emphasis added).

In contrast, the eavesdropping in *Katz* constituted a search and seizure of Katz's intangible conversations, which were constitutionally akin to his tangible papers and effects. *See Katz*, 389 U.S. at 353 (finding that "[t]he Government's activities in electronically listening to and recording the petitioner's *words* violated the privacy upon which he justifiably relied" (emphasis added)). The Supreme Court has reaffirmed many times that under the Constitution, conversations are like papers and effects, not mere business records. *See Berger v. New York*, 388 U.S. 41, 63 ("*conversation*" protected by the Fourth Amendment and akin to "the innermost secrets of one's home or office"); *Smith*, 442 U.S. at 741-42, *quoting New York Tel. Co.*, 434 U.S. at 167 (1977) (finding no search or seizure because the surveillance devices at issue did not disclose "*the purport of any communication* between the caller and the recipient" (emphasis added)); *United States v. U.S. District Court*, 407 U.S. 297, 313 (1972) ("the broad and unsuspected governmental incursions into *conversational privacy* which electronic surveillance entails necessitate the application of Fourth Amendment safeguards."). These cases confirm that the Fourth Amendment protects *the content of private conversations*, whether tangible or intangible and regardless of whether transmitted over the telephone system or the Internet.

Finally, the conclusion that the Fourth Amendment protects stored email is also supported by analogy to the expectation of privacy in the contents of sealed postal mail and in the contents of hotel rooms and other rented properties. The Supreme Court has recognized an expectation of privacy in the contents of sealed packages and letters even though carried by a third party. *See Ex Parte Jackson*, 96 U.S. 727, 733 (1878). Bank customers expect privacy in the contents of their safe deposit boxes, even though stored

7

by a third party. *See United States v. Thomas*, No. 88-6341, 1989 WL 72926, at *2 (6th Cir. July 5, 1989). Finally, tenants in rented residences and hotel rooms maintain Fourth Amendment privacy in their units while they occupy them. *See Stoner v. California*, 376 U.S. 483, 489 (1964). The fact that the property owners and their employees may be entitled to enter the premises to repair damage or provide agreed-upon services, analogous to the "spam" and computer virus filtering often provided by email services such as Yahoo!, does nothing to diminish the tenant's expectations against the government. *Id.*

   B.   **Following Supreme Court Precedent, Judges and Scholars Have Regularly Concluded That Email Users Possess A Reasonable Expectation of Privacy in the Contents of Emails Stored With An Email Provider.**

Looking to the clear lesson of *Katz* and *Smith*, a long line of judges and legal scholars have concluded that the Fourth Amendment protects stored email messages. Two federal, military appellate courts have come to this conclusion, affording Fourth Amendment protection to email messages, despite the role of third-party email providers in storing these messages. *See, e.g., United States v. Maxwell*, 45 M.J. 406, 418-19 (C.A.A.F. 1996); *United States v. Long*, 64 M.J. 57, 65 (C.A.A.F. 2006). Many Article III courts have agreed. A judge in the District of Rhode Island has held that users possess Fourth Amendment rights in email accounts operated by Yahoo!. *Wilson v. Moreau*, 440 F. Supp. 2d 81, 108 (D.R.I. 2006) (finding "a reasonable expectation of privacy in [a user's] personal Yahoo e-mail account"). Another judge in the Eastern District of New York has ruled that the numbers dialed on a telephone *after* a call has been initiated— numbers like account numbers sent to a bank or the password and commands sent to a

voice mail system—are protected contents under *Katz*, and distinguishable from unprotected numbers dialed to initiate a call under *Smith*. *In re Applications of U.S. for Orders Authorizing the Use of Pen Registers and Trap and Trace Devices*, 515 F. Supp. 2d 325, 336 (E.D.N.Y. 2007). Similarly, a judge the District of Massachusetts found Fourth Amendment protection in the contents of a password-protected website. *United States v. D'Andrea*, 497 F. Supp. 2d 117 (D. Mass. 2007).

Importantly, none of these judges applied the assumption of risk rationale of *Miller* to email. As one put it,

> The "assumption of risk" . . . is far from absolute. "Otherwise phone conversations would never be protected, merely because the telephone company can access them; letters would never be protected, by virtue of the Postal Service's ability to access them; the contents of shared safe deposit boxes or storage lockers would never be protected, by virtue of the bank or storage company's ability to access them." These consequences of an extension of the assumption of risk doctrine are not acceptable under the Fourth Amendment.

*In re Applications of U.S.*, 515 F. Supp. 2d at 338 (citations removed).

Courts of Appeal, including this Circuit, have concurred. Both the Ninth and Sixth Circuits have directly extended Fourth Amendment protection to the contents of electronic communications, albeit in one opinion that was vacated on other grounds and another that is currently being reviewed by the Supreme Court. First, the Ninth Circuit found that users of a text messaging service possessed a Fourth Amendment reasonable expectation of privacy, because it could find "no meaningful distinction between text messages and letters." *Quon v. Arch Wireless Operating Co.*, 529 F.3d 892, 905 (9th Cir. 2008).

Second, in *Warshak v. United States*, 490 F.3d 455 (6th Cir. 2007) ("*Warshak I*"), the Sixth Circuit noted that "like the telephone earlier in our history, e-mail is an ever-increasing mode of private communication, and protecting shared communications through this medium is as important to Fourth Amendment principles today as protecting telephone conversations has been in the past." *Id.* at 473. It expressly rejected the assumption of risk rationale for email, finding that "simply because the phone company or the ISP *could* access the content of e-mail and phone calls, the privacy expectation in the content of either is not diminished, because there is a societal expectation that the ISP or the phone company will not do so as a matter of course." *Id.* at 471 (emphasis in original).

Although both of these opinions have now been vacated—*Warshak* as not ripe, *Warshak v. United States*, 532 F.3d 521, 523 (6th Cir. 2008), *Quon* by the Supreme Court upon its grant of certiorari, *City of Ontario v. Quon*, 130 S. Ct. 1011 (2009)—both cases are nevertheless persuasive precedents. *Warshak* provides a detailed and careful explanation why email contents are constitutionally protected. *Quon* directly applies the Ninth Circuit's earlier reasoning in *United States v. Forrester*, 495 F.3d 1041 (9th Cir. 2007), which is still binding precedent. In *Forrester*, the Ninth Circuit expressly analogized electronic mail—with its non-private addressing information and its private contents—to physical mail. *Id.* at 1049 ("E-mail, like physical mail, has an outside address "visible" to the third-party carriers that transmit it to its intended location, and also a package of content that the sender presumes will be read only by the intended recipient. The privacy interests in these two forms of communication are identical. The

contents may deserve Fourth Amendment protection, but the address and size of the package do not.").

Even more recently, the Eleventh Circuit recognized the Fourth Amendment distinction between the contents of communications that are expected to remain private and non-content information that is voluntarily exposed to a communications provider. *See United States v. Beckett*, No. 09-10579, 2010 WL 776049, at *4 (11th Cir. March 9, 2010) ("Beckett could not have had a reasonable expectation of privacy in the information that was obtained from the ISPs and the phone companies. The investigators did not recover any information related to *content*.") (unpublished *per curiam* opinion by Judges Hull, Wilson, and Anderson) (emphasis added).[4]

Finally, courts have found important expectations of privacy in email outside of the Fourth Amendment context. For example, several courts have extended the attorney-client privilege to email messages, finding both subjective and objective expectations of privacy and explaining why the provider's ability to access the messages did not produce a different result. *See, e.g., Stengart v. Loving Care Agency, Inc.*, A-16-09, 2010 N.J. LEXIS 241, *38-39, 2010 WL 1189458 (N.J. Mar. 30, 2010) ("Under all of the circumstances, we find that Stengart could reasonably expect that e-mails she exchanged

---

[4] In another opinion published just two days after *Beckett*, a different panel of the Eleventh Circuit threatened to upset the consensus that the content of electronic communications are protected by the Fourth Amendment, by conflating email *content* with email *records* when holding that, "[l]acking a valid expectation of privacy in that *email information*, Rehberg fails to state a Fourth Amendment violation for the subpoenas for his *Internet records*." *Rehberg v. Paulk*, No. 09-11897, 2010 WL 816832, at *9 (11th Cir. Mar. 11, 2010) (emphasis added). *Amicus* EFF, representing the plaintiff, petitioned last month for a rehearing in that case (petition available at http://www.eff.org/files/filenode/rehberg_v_hodges/_rehbergmotion.pdf, last accessed Apr. 14, 2010).

11

with her attorney on her personal, password-protected, web-based [Yahoo!] e-mail account, accessed on a company laptop, would remain private."); *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 565 (S.D.N.Y. 2008) (finding, in the attorney-client privilege context, that a user "had a reasonable subjective and objective belief that his [Hotmail] communications would be kept confidential").

In addition to the growing consensus in the courts, a growing number of legal scholars have concluded that users have a reasonable expectation of privacy in the contents of electronic mail messages. *See, e.g.*, Patricia L. Bellia & Susan Freiwald, *Law in a Networked World: Fourth Amendment Protection for Stored Email*, 2008 U. CHI. LEGAL F. 121, 135-140; Orin S. Kerr, *Applying the Fourth Amendment to the Internet: A General Approach*, STAN. L. REV. (forthcoming 2010) (setting out a presumption that the contents of communications are normally protected by the Fourth Amendment); Stephen Henderson, *Nothing New Under the Sun? A Technologically Rational Doctrine of Fourth Amendment Search*, 56 MERCER L. REV. 507, 527 (2005) ("Therefore, as with postal mail and telephone conversations, the sender of e-mail retains no REP [reasonable expectation of privacy] in the addressing components, but should retain a REP in the contents."). *Amici* know of no legal scholars who have concluded otherwise.

In sum, many of our most important private conversations have migrated from the telephone network and the sealed envelope to the email server, and the Supreme Court's repeated holdings about conversational privacy should apply directly to this new medium. *Katz* and *Smith* require that this Court afford stored email the same protection as private conversations, papers and effects.

C.  **Yahoo!'s Privacy Policy and Terms of Service Support Users' Reasonable Expectation of Privacy in Their Emails.**

Email providers like Yahoo! routinely supplement their users' expectation of privacy via official "privacy policies" that delineate the providers' limited authority to access stored email. For example, Yahoo!'s Privacy Policy reassures users that:

> **Yahoo! takes your privacy seriously....** We limit access to personal information about you to employees who we believe reasonably need to come into contact with that information to provide products or services to you or in order to do their jobs. We have physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you.

Yahoo!, *Yahoo! Privacy Policy, available at* http://privacy.yahoo.com/ (last visited Apr. 14, 2010) (emphasis in original). These representations illustrate the reasonableness of email users' expectation of privacy.

Yahoo!'s Terms of Service further bolster an expectation of privacy by disclaiming any ownership interest in its users' emails. *See* Yahoo!, *Yahoo! Terms of Service,* available at http://docs.yahoo.com/info/terms/ (last visited Apr. 14, 2010) ("Yahoo! does not claim ownership of Content you submit or make available for inclusion on the Yahoo! services."). Thus, the emails in this case are entirely unlike the records in *Miller*, which were "not respondent's 'private papers'" nor his "confidential communications" but instead were "*the business records of the banks*," and the "respondent [could] assert neither ownership nor possession [of the documents]." *Miller*, 425 U.S. at 442 (emphasis added).

Should the government contend that Yahoo!'s privacy policy and terms of service eliminate users' expectation of privacy in their emails, as it has in other cases, this Court should decline that invitation "to make a crazy quilt of the Fourth Amendment" by

13

allowing its protections to be dictated by the "practices of a private corporation." *See Smith*, 442 U.S. at 745. Basic constitutional rights should not turn on the wording of a particular email provider's agreements with its users. Instead, this Court should follow the course of other cases addressing Yahoo! email, and find a reasonable expectation of privacy in the web-based mail service. *See Wilson v. Moreau*, 440 F. Supp. At 108 (finding reasonable expectation of privacy in Yahoo! email); *Stengart v. Loving Care*, 2010 N.J. LEXIS 241, *38-39 (same).

The mere fact that a privacy policy or term of service may allow for some level of access to a user's emails is not enough to undermine the constitutionally protected expectation of privacy. The fact that others may have occasional access to a computer does not automatically eliminate Fourth Amendment protection for others that use that computer. *Leventhal v. Knapek*, 266 F.3d 64, 73-74 (2d Cir. 2001) (holding that public employee had a reasonable expectation of privacy in the contents of his office computer). Nor do policies that allow limited access to private content in order to maintain the security and integrity of the provider's systems. *United States v. Heckenkamp*, 482 F.3d 1142, 1147 (9th Cir. 2007) (University policy reserving right to access student computers to protect rights and property did not undermine reasonable expectation of privacy or Fourth Amendment protection).

Rather, as *Katz*, *Smith*, and *New York Tel. Co.* make clear, neither a provider's limited ability to access communications nor its occasional use of that ability is relevant to the customer's expectation of privacy in the *contents* of those communications. A "telephone conversation itself must be electronically transmitted by telephone company equipment, and may be recorded or overheard by the use of other company equipment."

14

*Smith*, 442 U.S. at 746 (Stewart, J., dissenting). "Yet," despite telephone providers' potential and actual surveillance of phone calls, the Supreme Court has "squarely held that the user of even a public telephone is entitled 'to assume that the words he utters into the mouthpiece will not be broadcast to the world.'" *Id.* at 746-47, *quoting Katz*, 389 U.S. at 352. Put simply, the potential exposure of telephone call content to a phone company's linesmen and fraud investigators does not eliminate a caller's expectation of privacy against the government.

Phone service subscribers retain this expectation despite the fact that, at common law, they have impliedly consented to eavesdropping by the phone company that is reasonably necessary to effectively maintain the phone service or prevent its fraudulent use. *See, e.g., Bubis v. United States*, 384 F.2d 643, 648 (9th Cir. 1967), *citing Brandon v. United States*, 382 F.2d 607 (10th Cir. 1967). This common law "provider exception" to statutory wiretapping claims existed when *Katz* was decided, and was codified in 1968's federal Wiretap Act and subsequent amendments:

> It shall not be unlawful under this chapter for . . . a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service . . . .

18 U.S.C. § 2511(2)(a)(i). Yet no court has ever indicated that this limited access and disclosure—or a subscriber's implied consent to it—negates the subscriber's expectation of privacy in the contents of her communications.

Yahoo!'s terms of service describing when it may voluntarily access or disclose Yahoo! customers' email track the existing provider exception, and like that exception focus on Yahoo!'s ability to render service and protect its rights and property:

> You acknowledge, consent and agree that Yahoo! may access, preserve and disclose your account information and Content if required to do so by law or in a good faith belief that such access preservation or disclosure is reasonably necessary to: (i) comply with legal process; (ii) enforce the TOS; (iii) respond to claims that any Content violates the rights of third parties; (iv) respond to your requests for customer service; or (v) protect the rights, property or personal safety of Yahoo!, its users and the public.

Yahoo!, *Yahoo! Terms of Service*, available at http://docs.yahoo.com/info/terms/ (last visited Apr. 14, 2010). This is exactly the type of limited access by the provider that was and is irrelevant under *Katz*'s and *Heckenkamp*'s reasoning.

Consequently, neither the potential exposure of stored email to Yahoo!'s system administrators in the course of their regular duties, nor Yahoo!'s use of software filters to screen out junk email and emails containing viruses, eliminates an email user's expectation of privacy. To hold otherwise would pose a constitutional Catch-22 that ignores the vital role that email and the Internet as a whole play in private communication. Providers attempting to offer absolutely private, constitutionally-protected communications solutions by swearing off *any* access to customers' content would be unable to adequately maintain the security and reliability of their services, while Internet users wishing to take advantage of reliable services free of security-threatening computer viruses and crippling amounts of unsolicited "spam" messages would be forced to sacrifice their Fourth Amendment rights. Such a result would, contrary to *Kyllo*, allow advances in technology to erode long-standing societal understandings of privacy, *see id.*, 533 U.S. at 34, and contrary to *Katz*, force Internet

users to accept that the messages they send may be broadcast to the world, *see id.*, 389 U.S. at 352.

## CONCLUSION

The Fourth Amendment protects stored emails just as it does conversational privacy and private papers, even if those emails are over 180 days old. This Court must protect the reasonable expectation of privacy in these emails by quashing the subpoena in this case. Furthermore, the Fourth Amendment requires that any warrant or other order that issues from this Court allowing access to or compelling disclosure of Defendant's communications must particularly describe the messages subject to that warrant or order, in order to avoid the constitutional problems of overbreadth and over-seizure as highlighted in the Ninth Circuit case of United States v. Comprehensive Drug Testing, Inc., 579 F.3d 989, 1005 (9th Cir. 2009) (en banc).

For the foregoing reasons, the government's subpoena to Yahoo! should be quashed.

DATED: April 15, 2010

By _[signature]_

Matthew T. Findley, AK Bar No. 0504009
ASHBURN & MASON, P.C.
1227 W. 9th Ave. Ste. 200
Anchorage, AK 99501
(907) 276-4331 (voice)
(907) 277-8235 (fax)
mtf@anchorlaw.com (email)

*Local Counsel For Amicus Curiae*

Jennifer Stisa Granick (*Pro Hac* pending*)*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
(415) 436-9333, Ext. 134 (voice)
(415) 436-9993 (fax)
jennifer@eff.org (email)

ATTORNEYS FOR *AMICUS CURIAE*